**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHARMACY CORPORATION OF AMERICA d/b/a PHARMERICA | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| GARDENVIEW MANOR, LLC D/B/A GARDENVIEW MANOR | ) ) ) ) | |
| and | ) ) | |
| PREMIER HEALTHCARE MANAGEMENT, LLC | ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff, Pharmacy Corporation of America d/b/a PharMerica ("PharMerica"), states as follows for its Complaint against Defendants Gardenview Manor, LLC d/b/a Gardenview Manor ("Gardenview"), and Premier Healthcare Management, LLC ("Premier") (Gardenview and Premier are collectively referred to as "Defendants"):

### NATURE OF THE ACTION

1.      This action arises out of Gardenview's failure to pay PharMerica for the amounts owing pursuant to the parties' May 1, 2017 Pharmacy Services Agreement (the "PSA").[1]

2.      This action also arises out of Gardenview's improper termination of the PSA in the middle of a term while outstanding amounts were past due and owing to PharMerica.

---

[1] The PSA contains confidential information, including pricing information, and has not been attached. Copies can be provided to the Court under seal and the Defendants upon request and entry of a protective order.

3. Finally, this action arises out of Premier's unjustified and tortious interference with Gardenview and PharMerica's PSA relating to the provision of pharmacy goods and services.

4. PharMerica performed all obligations of it under the PSA, including satisfying any and all conditions precedent to payment.

### THE PARTIES

5. Pharmacy Corporation of America is a California corporation with its principal place of business in Louisville, Kentucky. Thus, for purposes of federal diversity jurisdiction, Pharmacy Corporation of America is a citizen of California and Kentucky.

6. Premier is an Illinois limited liability company, whose sole member is Barak Baver, a citizen of Illinois. Therefore, Premier is a citizen of Illinois for purposes of federal diversity jurisdiction.

7. Gardenview is an Illinois limited liability company, whose members are Barak Baver and David Cheplowitz, citizens of Illinois. Therefore, Gardenview is a citizen of Illinois for purposes of federal diversity jurisdiction.

8. Gardenview owns, operates, and holds the Medicare provider number for the skilled nursing facility located at 14793 Catlin Tilton Road, Danville, Illinois 61834.

9. Premier is the ultimate management, and controlling company of Gardenview.

### JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants because Defendants transact business in this state.

2

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant Premier resides in this judicial district, the registered agents of both Defendants are located in this judicial district and all Defendants reside in this state.

## STATEMENT OF FACTS

### *The PSA*

13.     PharMerica provides pharmacy goods and services to residents of skilled nursing facilities and long-term care facilities.

14.     On or about May 1, 2017 PharMerica and Gardenview entered into the PSA, whereby PharMerica agreed to provide pharmacy-related goods and services to the residents of the skilled nursing facility operated by Gardenview, and Grandview agreed to pay for those services.

15.     The PSA was signed by Barak Baver as an owner of Gardenview.  Mr. Baver is also the owner of Premier.

16.     Under the PSA, Gardenview specifically represented and warranted that it was entering the contract for PharMerica to be the exclusive pharmacy provider to the residents of the facility operated by Gardenview.  *See* PSA § 5.

17.     The initial term of the PSA was from May 1, 2017 through April 30, 2019.  *See id.* § 2.  The PSA automatically renewed for successive one-year terms unless the PSA was terminated in accordance with the terms therein.  *Id.*

18.     Pursuant to the PSA and PharMerica's performance thereunder, Gardenview was obligated to pay for the pharmacy goods and services provided by PharMerica within ninety (90) days of the invoice date, *id.* § 6(D)(1), and Gardenview's failure to do so would result in eighteen percent (18%) annual interest being charged on all outstanding amounts due.  *Id.* §6(D)(2).

19.     Gardenview also agreed to pay for all of PharMerica's attorneys' fees and costs to the extent it was forced to initiate collection efforts for outstanding amounts owed.  *Id.* §16(I).

20.     The PSA could only be terminated by providing the other party written notice of non-renewal not less than ninety (90) days prior to the expiration of the then current term and the termination would only be effective on the last day of the then effective term.  *Id.* §7(A).  If the party desiring termination does not comply with the notice and timing requirements, the PSA automatically would renew for another successive year term.  *Id.*

21.     Even if the notice was otherwise in accordance with the requirements for termination of the PSA as set out in Section 7, any notice of termination issued by Gardenview while outstanding amounts were due and owing was void, *id.* §7(D), and Gardenview could not terminate the PSA unless it paid all amounts owed to PharMerica prior to termination.  *Id.* §6(D)(4)-(5).

22.     Upon notice of termination of the PSA, all outstanding invoices became due thirty (30) days after the invoice date.  *Id.* §7(C).

23.     Kentucky law governs this dispute pursuant to §16(J) of the PSA.

*Premier Takes Over Management of Gardenview*

24.     On or about July 21, 2020, Premier took over as the management company of Gardenview and otherwise controlled Gardenview in the entirety.

25.     PharMerica was informed at this time that co-owner David Cheplowitz was no longer involved in the ownership of Gardenview, and co-owner Mr. Baver, and his management company Premier, were now in charge.

26.     However, per Gardenview's Medicare and NPI records, Mr. Baver and Mr. Cheplowitz currently are, and have always been at all relevant times, co-owners of Gardenview.

27.     While Gardenview was in arrears on PharMerica's invoices since April 2018, it had been slowly paying that balance down while paying the most recent invoices via monthly credit card payments authorized by Mr. Cheplowitz as the co-owner of Gardenview.

28.     After Premier took over the management of Gardenview near the end of July 2020, Premier, through Mr. Baver, contacted PharMerica and requested the balance owed, which PharMerica sent, and indicated a willingness to settle the past due balance.

29.     The balance was never paid by Gardenview or Premier.

30.     When PharMerica was finally able to reach Mr. Cheplowitz by phone on August 20, 2020, he stated that as of July 21, 2020, he no longer had any authorization regarding Gardenview.

31.     Gardenview then terminated its PSA with PharMerica at the direction of Mr. Baver as manager of Premier.  Mr. Baver sent PharMerica a Termination Notice dated August 31, 2020, effective September 30, 2020, and called PharMerica stating he was going to terminate the PSA regardless and wanted to negotiate a settlement on the balance due.

32.     When PharMerica declined, Gardenview proceeded with improperly terminating the PSA and failed to pay the past due invoices owing to PharMerica.

33.     Gardenview's termination was improper both because it was in the middle of a term that was not set to expire until April 30, 2021 and because past due amounts were owed at the time of the notice of termination from Mr. Baver and at the time Gardenview discontinued ordering from PharMerica.

34.     At all-times relevant, Premier had knowledge of the PSA and the obligations of Gardenview pursuant to the PSA.

35. Premier intended to cause Gardenview to breach the PSA by failing to pay PharMerica's invoices and terminating the PSA in the middle of a term while amounts were past due to PharMerica.

36. Premier intentionally and improperly interfered with the performance of the PSA between Gardenview and PharMerica by causing or directing Gardenview to not pay PharMerica's invoices and terminate the PSA in the middle of a term while amounts were past due to PharMerica, which was in violation of the PSA.

37. PharMerica has suffered damages as a direct and proximate result of Premier's intentional interference with PharMerica's PSA with Gardenview, including but not limited to, the amounts due and owing under the PSA and interest.

38. Premier had no privilege or justification to excuse its wrongful conduct.

*Gardenview's Uncured Defaults Under the PSA*

39. On or around August 31, 2020, Gardenview sent PharMerica correspondence stating that Gardenview was terminating the PSA effective at 11:59 p.m. on September 30, 2020 ("Termination Notice"), attached as **Exhibit A.**

40. On August 31, 2020, there were significant past due amounts owed by Gardenview to PharMerica under the PSA.

41. On October 1, 2020, Gardenview discontinued ordering pharmaceutical goods and services from PharMerica ("Termination").

42. On October 1, 2020, there were significant past due amounts owed by Gardenview to PharMerica under the PSA.

43.     Gardenview's Termination Notice and Termination were in violation of Sections 6 and 7 of the PSA, which state that Gardenview cannot provide notice of termination of the PSA or subsequently terminate the PSA when outstanding amounts were owed under the PSA.

44.     Gardenview's Termination Notice and Termination were also in violation of Section 7(A) of the PSA because any notice of non-renewal and termination would only be effective on the last day of the then effective term, which would be April 30, 2021.

45.     Gardenview's Termination Notice rendered all of Gardenview's outstanding invoices due within thirty (30) days of the invoice date.

46.     As of the date of this Complaint, all amounts owed by Gardenview are past due.

47.     PharMerica has incurred attorneys' fees and other costs in preparing and filing this action, all of which are the responsibility of Defendants. PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of Defendants.

48.     Upon information and belief, Gardenview has been reimbursed by Medicare for all or a significant portion of the goods and services provided by PharMerica, and Defendants have directly or indirectly benefited from such reimbursement to the detriment of PharMerica.

49.     Upon information and belief, Gardenview has reported PharMerica's invoice charges as valid expenses to Medicare on Gardenview's annual cost reports.

50.     Upon information and belief, Gardenview has reported invoice charges as valid expenses to the Internal Revenue Service for the purpose of reducing the amount of adjusted gross income on which Gardenview and/or its owners must pay taxes. As a result, Gardenview and/or its owners have or will pay lower taxes than they otherwise would have had to pay.

51.     All conditions precedent to the bringing of this action have either occurred, been satisfied, or have otherwise been waived.

### COUNT I – BREACH OF CONTRACT AGAINST GARDENVIEW
### (FAILURE TO PAY)

52.     PharMerica incorporates by reference the allegations set forth above.

53.     PharMerica entered into the PSA with Gardenview, which provides that Gardenview is obligated to pay invoices for goods and services provided by PharMerica within ninety (90) days of the invoice date.

54.     The PSA also provides that Gardenview is obligated to pay invoices for goods and services provided by PharMerica within thirty (30) days of the invoice date upon notice of termination of the PSA.

55.     The PSA is a valid and enforceable contract.

56.     PharMerica performed all of its obligations under the PSA, including submitting monthly invoices, and otherwise satisfied all conditions precedent to payment by Gardenview.

57.     Without legal justification or cause, Gardenview materially breached the PSA by failing to pay PharMerica sums due and owing for amounts invoiced after April 30, 2018 when those sums were due.

58.     As a direct and proximate cause of Gardenview's breach of the PSA by its failure to pay PharMerica, PharMerica has suffered damages, including but not limited to amounts due and owing, as set forth in its invoices, interest, and reasonable attorney's fees and costs, in excess of $177,265.65.

59.     Interest is accruing on the unpaid balance pursuant to the terms of the PSA in the amount of eighteen (18%) percent from April 30, 2018 until paid in full.  A calculation of the

principal amount and interest currently owing by Gardenview thru January 22, 2021 is attached as **Exhibit B.**

### COUNT II – BREACH OF CONTRACT AGAINST GARDENVIEW
### (IMPROPER TERMINATION OF THE PSA)

60.     Except to the extent inconsistent with the relief requested in the Count, PharMerica incorporates by reference the allegations set forth above.

61.     Gardenview entered into the PSA with PharMerica.

62.     The PSA is a valid and enforceable contract.

63.     PharMerica performed all conditions, covenants, and promises on its part to be performed under the PSA.

64.     Without legal justification or excuse, Gardenview materially breached the PSA by purporting to terminate the PSA while amounts were due and owing to PharMerica under the PSA.

65.     Without legal justification or excuse, Gardenview materially breached the PSA by terminating as of September 30, 2020 prior to the then-current termination date of April 30, 2021, discontinuing ordering pharmacy goods and services from PharMerica, and utilizing another pharmacy provider while amounts were due and owing to PharMerica under the PSA.

66.     As a direct and proximate result of Gardenview's breaches of the PSA, PharMerica has suffered damages, including, but limited to, seven months of lost profits totaling $159,424.

### COUNT III – UNJUST ENRICHMENT/CONSTRUCTIVE TRUST AGAINST GARDENVIEW

67.     In the alternative to Count I, PharMerica asserts this claim for Unjust Enrichment.

68.     Except to the extent inconsistent with the relief requested in this Count, PharMerica incorporates by reference the allegations set forth above except for the allegations set forth in paragraphs 14-42 and 47-61, of the Complaint.

9

69.     PharMerica has conferred a benefit on Gardenview at PharMerica's expense by providing it with valuable pharmaceutical goods and services delivered to the residents and patients of the skilled nursing facilities owned and operated by Gardenview.

70.     Gardenview received, appreciated, accepted and enjoyed the benefits of PharMerica's services.

71.     Gardenview has not paid PharMerica for those pharmaceutical goods and services.

72.     By accepting the benefit of PharMerica's goods and services, Gardenview should have known that PharMerica would expect to be compensated for such goods and services.

73.     Gardenview wrongfully and intentionally withheld payment from PharMerica for the goods and services PharMerica provided.

74.     Allowing Gardenview to accept the benefits of PharMerica's pharmaceutical goods and services without payment of the value thereof is inequitable.  Consequently, Gardenview has been unjustly enriched at the expense of PharMerica.

75.     Furthermore, Gardenview has knowingly and willfully received, or will receive, reimbursement by Medicare, directly or indirectly, for goods and services provided by PharMerica, and has wrongfully and intentionally withheld or will withhold such amounts from PharMerica.

76.     Gardenview has a legal and fiduciary duty to immediately remit proceeds received in reimbursement from Medicare to PharMerica if it has not timely paid invoices as required by the PSA.

77.     It is against equity and good conscience to permit Gardenview to retain the Medicare reimbursements without paying for pharmaceutical goods and services provided by PharMerica for which reimbursements were made.

78. For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by Gardenview as reimbursement by Medicare for goods and services provided by PharMerica, plus interest, costs, and attorneys' fees.

COUNT IV – TORTIOUS INTERFERENCE
WITH CONTRACT AGAINST PREMIER HEALTHCARE

79. Except to the extent inconsistent with the relief requested in the Count, PharMerica incorporates by reference the allegations set forth above.

80. Gardenview entered into the PSA with PharMerica.

81. The PSA is a valid and enforceable contract.

82. At all times relevant, Defendant Premier had knowledge of the PSA and the obligations of Gardenview pursuant to that agreement.

83. While Gardenview was in arrears on PharMerica's invoices since April 2018, it had been slowly paying that balance down while paying the most recent invoices via monthly credit card payments authorized by David Cheplowitz, co-owner of Gardenview with Mr. Baver.

84. After Premier took over the management of Gardenview near the end of July 2020, Mr. Baver contacted PharMerica and requested the balance owed, which PharMerica sent, and indicated a willingness to settle the balance.

85. But the balance was not paid. Instead, when PharMerica collection associate Ms. Natalie Kayser was finally able to reach Mr. Cheplowitz by phone on August 20, 2020, he stated that as of July 21, 2020, he no longer had any authorization regarding Gardenview.

86. Mr. Baver then sent PharMerica the Termination Notice dated August 31, 2020 and called PharMerica stating he was going to terminate the PSA regardless and wanted to negotiate a settlement on the balance due. When PharMerica declined, Gardenview improperly terminated the PSA and failed to pay the past due invoices owing to PharMerica.

87.     As soon as Premier took over the management of Gardenview, Gardenview stopped paying PharMerica and terminated the PSA.

88.     Defendant Premier intended to cause Gardenview to breach the PSA by failing to pay PharMerica's invoices and terminating the PSA in the middle of a term while amounts were past due to PharMerica.

89.     Premier intentionally and improperly interfered with the performance of the PSA between Gardenview and PharMerica by causing or directing Gardenview to not pay PharMerica's invoices and terminate the PSA in the middle of a term while amounts were past due to PharMerica, which was in violation of the PSA.

90.     PharMerica has suffered damages as a direct and proximate result of Premier's intentional interference with PharMerica's PSA with Gardenview, including but not limited to, the amounts due and owing under the PSA and interest.

91.     Premier had no privilege or justification to excuse its wrongful conduct.

### COUNT V – BREACH OF CONTRACT (ATTORNEYS' FEES) AGAINST GARDENVIEW

92.     Except to the extent inconsistent with the relief in this count, PharMerica incorporates by reference the allegations set forth above.

93.     Pursuant to the PSA, Gardenview agreed to pay PharMerica its costs, including attorneys' fees, incurred in connection with collecting payment from Gardenview.

94.     Gardenview has failed to fulfill its obligations under the PSA to pay PharMerica what it is owed through the current PSA term.  PharMerica has incurred attorneys' fees and other costs in connection with its efforts to collect payment under the PSA, which are the responsibility of Gardenview.  PharMerica is likely to incur substantial additional attorneys' fees and costs as this case is litigated, which shall also be the responsibility of Gardenview.

**PRAYER FOR RELIEF**

WHEREFORE, PharMerica requests judgment against Defendants as follows:

A.     An award of compensatory damages against both Defendants in an amount to be proven at trial;

B.     An award of punitive damages against Defendant Premier Healthcare Management, LLC for its tortious interference with Plaintiff's contract with Defendant Gardenview Manor, LLC;

C.     The imposition of a constructive trust on sums received by Defendant Gardenview as Medicare reimbursement for pharmacy goods and services provided by PharMerica and not paid for by Gardenview;

D.     PharMerica's attorneys' fees, expenses and costs associated with its collection of amounts owed to it by Gardenview;

E.     Prejudgment and post-judgment interest; and

F.     All other relief to which PharMerica may be entitled.

Dated:  January 25, 2021

Respectfully submitted,

/s/ Richard A. Saldinger_____
Richard A. Saldinger (ARDC No. 6209930)
Latimer LeVay Fyock LLC - #47473
55 W. Monroe Street, Ste. 1100
Chicago, IL 60603
(312) 667-1359; Facsimile: (312) 422-8001
rsaldinger@llflegal.com
           -and-
Of Counsel:
Jennifer Metzger Stinnett, Admission *Pro Hac Vice* To Be Sought
FULTZ MADDOX DICKENS PLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
(502) 588-2000; Fax:  (502) 588-2020
*Counsel for Plaintiff*

13

14